May it please the Court, Counsel. My name is Brad Maxa. I'm here representing Robert Kelly, who's in the back of the courtroom. With me at counsel table is my partner, Michelle Manili. We are here to discuss application of the Tegman case, which is the centerpiece of a quirky little area of Washington law. In Tegman, the Washington Supreme Court held that there can be no joint and several liability between a negligent actor and an intentional actor. And in that situation, there has to be a segregation between intentionally caused damages and negligently caused damages. The very narrow issue in our case is what happens when the negligent conduct causes the intentional conduct, when they are on the same chain of causation. Counsel, doesn't the Doe v. LDS Church case, the Washington Court of Appeal case, resolve that issue? Well, Doe certainly addressed this issue. The facts are slightly different. Clearly, it was dicta. And this court is here to try to predict what the Washington Supreme Court is going to do. The Doe case is certainly something that can be considered as part of that. But the Tegman discussion also should be considered as well as other factors. We submit that there should not and cannot be a segregation of damages between intentional and negligent when, in fact, there is this causal connection. As I understand it, Counsel, the Tegman case arose out of some kind of a tort reform initiative or statutory provision that came in. And one of the purposes of it was this very thing, to segregate the liability for intentional torts versus negligent torts. Do I understand that correctly? There was a Tort Reform Act of 1986, and it did basically say we're not going to treat joint and several liability as the rule anymore. And it is important to understand that Tegman is a joint and several liability case. And we don't really quibble with that general concept. We're not talking about joint and several liability here. We're talking about causation. We're not suggesting that the Church and the pedophile are jointly and severally liable. We're saying the Church's negligence caused that intentional conduct, and therefore there's liability under general principles. What should we look at in the record, say, arguendo, that we agree with your construction of what this case is about? Didn't the trial court look at this issue and reject it and found, in its view, no basis for that? How should we construe the trial court's analysis of this? The trial court analyzed this as a matter of law. And the question is, are we going to make the jury segregate or not? And the court said, yes, we are, as a matter of law, under Tegman. And then once there was a segregation, then the question became, well, because the negligence caused all these intentional acts, how can there be a segregation? So you're saying that the trial court did, in fact, make a finding that the negligence of the Church did cause the intentional act? The fact finder did, yes. That was the theory of that. Was that a jury? It was a jury. Wasn't there also negligent causation, which, in the natural and orderly scheme of things, caused intentional acts in Tegman? Yes and no. Two attorneys and an employer. The attorneys were negligent, but their negligence, in the fashionable word that we use today, enabled the employer to be intentional. Same happened in Doe. In part. Not in part. In the part that concerns us. Well, except we need to be very careful. And Tegman was very clear that there might be shifting, there might be joint and several liability for some things and not other things. It's important to look in Tegman where the causation lay. There was, in fact, negligence that caused, in part, some of the intentional act. The paralegal and the lawyer should have told their client that this person wasn't licensed to practice. And there is a causal connection there. So in that situation, yes. However, there was other intentional conduct that had no causal connection. Like what? The non-lawyer contacted and signed up and signed a contingency fee agreement with the plaintiff before these other negligent parties ever had any involvement. And that fact alone takes Tegman out of our situation. There's no causal connection between what the lawyer did and this guy signing up his client. That was a fraudulent, intentional, criminal act that had absolutely nothing to do with the negligent parties. And that alone, under Tegman, requires a segregation. There has to be a segregation between the damage caused by that initial fraudulent act in signing up the client. And then if you're looking at the back end, I think there's also not a causal connection. Because you remember that the ultimate injury here was that he settled without the client's consent and he forged the client's name. Now, had the attorney told the client this guy isn't licensed, he still would have and probably could have settled and forged. That is outside the causal connection between the negligent actors and the damage. The existing contingent agreement with a non-lawyer in Tegman didn't cause any damages until after the professional lawyers had been brought on board. And that could have caused no damages had they reported the act to the plaintiff victim. Correct? You could say that, but... In other words, using your causation analogy, the pre-professional involvement act of the non-licensed lawyer had not caused any damages, nor would it cause any damages had the professionals acted professionally and not negligently. If you want to say that, then the same has to be said for the lawyer who acted negligently. Had she told the client, who's to say this person wouldn't have still settled without their consent and forged the signature? That had nothing to do whether the client knew he was a licensed attorney or not. He still would have forged. He still would have settled without their consent. But the negligent parties did not bring these people together. Well, then that argument is that the negligent party paid no cause at all. Well, I think you could make that argument in the Tegman case. Again, I think it's very important to look at the fact that there's some negligence that contributed to the intentional cause damages. I want to go back to that in this particular case, if I may, as opposed to Tegman. If I understood you correctly a moment ago, you indicated that the jury made a finding that the negligent party, in this case the LDS Church, caused the intentional tort of the child molester. But because of the Tegman instruction, couldn't do that. I'm puzzled because I'm looking here at what is the order denying motion for a new trial. I don't know where it is in the record, but in the order, it's on page 2, joining at line 17. And this the court wrote prior to trial. The court granted defendants motion to segregate damages, finding that Washington law required the segregation of damages caused by the intentional conduct of non-party Jack Loholt from those damages attributable to defendants' alleged negligence, if any. Now, if that's the case, the jury would have never had an opportunity to even make the finding that I understood you to say that it did. Am I missing something? Yes, because they had to make that finding in order to impose liability on the church. The only way the church can possibly be liable is if they're negligent. There's a difference, counsel, as I understand it here, between the church being liable for negligence. And I don't think there's any dispute of that. As you say, there was a finding. But what you're saying, if I understand you correctly, is not just that the church was negligent, but that the church caused the intentional tort. That's a different thing. What is there in the record that says that the jury found, indeed how could it have found in light of the instruction given, that the church caused the intentional tort? The jury was asked, was the church negligent? They answered yes. They were asked, did that negligence cause the damages of the plaintiff? And they answered yes. Is that in the record anywhere? I believe it's in the verdict form, Your Honor. I don't have a say. Well, if the negligence could have caused the damages of the plaintiff, with respect to negligence damages, they weren't asked did the negligence cause the intentionally caused damages. But that's all there were. He was assaulted by a pedophile. There's no other damages that possibly could have been found. You know, in Kentucky we have what we call comparative negligence. That's what we hear. And this seems almost to be the same, except they just word it differently. And in this case they attributed, the jury attributed most of the fault to the intentional tortfeasor, which seems logical to me. Now, why isn't that logical? Well, actually, you pointed out the difference in the statute. You cannot attribute fault to an intentional tortfeasor. That's what Tegman said. You can only attribute fault to negligent people. And they did assign some fault to other negligent people, and there's not an issue here. But you can't assign fault to the intentional tortfeasor. If you're correct, if you're correct, and Tegman is distinguishable in that fashion, then what you're really saying is that the church, in this case, would be liable for the entire award. Is that correct? Yes. If that's the case, doesn't that completely vitiate the 86 reform? No, because the 86 reform is talking about joint and sever liability. But, in effect, that's what's happening. Instead of doing it directly, it's kind of going around the back way. You could say that, but we're talking about principles of negligence law now. And, for instance, you could say the same thing under a wide variety of factors. And I think what I keep coming back to is when we have that causal connection, it is just utterly absurd to try to say that you can somehow segregate it out. And I want to use just a real basic example that helped bring it home for me. Let's say we have a lightning storm. Lightning strikes a house, burns it down. So the question is, if Tegman applied to a situation like that, you'd say, okay, segregate damages between the lightning and the fire. That's absurd. The lightning caused the fire. You can't say, well, the lightning was 40% and the fire was 50%. The lightning caused 100% of that fire. Similarly, if, you know, you can come up with all. The jury's being asked for to do here under this statute is to apportion moral culpability. They find the assaulter three times as culpable as the church. They strangle it in a bunch of verbiage, but that's what comes out, right? Well, that's the problem, because Tegman says you cannot do that. You cannot assign fault to an intentional tortfeasor. That is the holding of Tegman. And yet that is the- The way to get around that is saying we're not assigning fault. We're taking intentional act and assigning the amount of damages we find this man to be morally responsible for, and the rest of them is based on fault. That's basically what's happening, but it's inconsistent with Tegman itself, which says you cannot do that. You cannot weigh the relative faults between an intentional tortfeasor and a negligent tortfeasor. The statute says you cannot do that. Intentional act is not fault by definition. I didn't say fault. I said moral culpability. Yes. Isn't it actually backward from what you're saying? As I understand Tegman, the instruction is that that fault, that those actions that are intentional are to be evaluated on their own without reference to the negligent tortfeasor. That is correct. Isn't that really what Tegman said? So if that's the case, how then in this instance can the church be liable for the actions of the pedophile? Because what you're then saying is, okay, the church made it possible. The church contributed, and therefore the jury found it liable. But the result of that is that what was to be the segregated responsibility of the intentional tortfeasor suddenly is affixed to the negligent tortfeasor, which is the very thing that Tegman was trying to prevent. Tegman was trying to prevent joint and several liability between the two. We're not asking for joint and several liability. We are relying on fundamental principles of tort law. You are liable for the natural and logical consequences of your church's action. Unless the law of the state, in this case the state of Washington, says otherwise with respect to intentional tortfeasors. And I guess that's what I'm struggling with. I understand that as a matter of general tort law you're, of course, absolutely correct. And that is the whole concept of the joint and several liability. But in this case, it seems to me, as I read the statute in Tegman and Doe, that the state of Washington has made a policy determination for its own reasons that the actions of intentional tortfeasors stand on their own. And they are to be assessed in that sense. And it looks like that's what the trial court here did. And it looks like that's what the court of appeals in Doe did and referred to. I gather from reading it with applause for the decision of this court at the trial level that it had properly applied Tegman. Do you disagree with that understanding? Well, I want to go back to Tegman because Tegman has not, in my mind, addressed this. And I think Tegman actually left open this question specifically.  And one is on 75P3 at 502. They say this a couple different times. It says the negligent defendants are jointly and severally liable only for that part of the total damages that they negligently caused. I'm looking at 502. We're on the page. It's right in the middle of the page. On the left side or the right side? Left column.  Okay. All right. That's on the right column in mind. I'm sorry. But it talks about the negligent defendants are liable. They're still liable for the total damage that they negligently caused. Here the church negligently caused these intentionally based damages. And then over on page 75P3 at right at the bottom of 504, very top of 505, and this is the key language that we both talked about in the brief, the court says the legislative scheme also serves to provide some relief to negligent defendants whose conduct is not as egregious as the intentional tortfeasor. And that's what you're talking about. But then they go on to say nor the cause of the intentionally based damages. So the court specifically is saying, you know what, if the negligence is the cause of the intentionally based damages, we're not going there yet. How can that be? Under your argument, then, a negligent defendant would be liable for punitive damages by another actor. We have no punitive damages in the state of Washington. Well, but God bless you. Okay. But it would follow, would it not? I think what you're mixing up is the concept of cause as an element in negligent damages, and which there was here, then serving to be the cause for the intentional actions. The church here didn't incentivize the predator in this case. They put the predator. It made it impossible. Yes, they did. There's a big difference in moral culpability between the two. But we're not talking about moral culpability. I see I've run into my rebuttal time. Thank you. Thank you. Good morning, Your Honors. May it please the court. Jeff Tilden for the Church of Jesus Christ of Latter-day Saints. Does the panel have any questions before I begin? Is the appellant's argument basically focused on the dissent in Tegman? That's correct, Your Honor. That's the argument that the Washington Supreme Court considered at one time and rejected? Yes, sir. So why are we here is a good question, and that's one you're asking us to decide. Yes, sir. We're not the appellant. No, but you're here. I'm with you. In fairness to my very good friend, Mr. Maxa, when the Tort Reform Act was enacted in the state in 1986, there were questions what it meant. It was a sweeping change in the state's common law with regard to torts, and it was intended to dramatically improve it. Could you move that microphone up a little bit? Sure. I'm catching the full force of your elegant voice. When our state adopted tort reform in 1986, a sweeping change to the then-existing lay of the land occurred. There were some questions what had happened. The law, as is always the case, was clear in the center, but there were questions on the periphery. And over the succeeding 20 years, there have been a handful of Supreme Court cases that have answered certain of those questions. In 2002, or as of 2002, there was a question in the bar, how did the statute's treatment of fault address intentional torts? Fault is defined in the statute not in the way that we would define it with our children. It's not defined in the way that we would define it talking among ourselves. For purposes of the Washington 1986 tort reform statute, fault is defined as every conceivable kind of human conduct, beginning with strict liability at the left end, running up to but not including intentional criminal-like behavior at the right end or the other end. So fault, for purposes of our statute, includes negligence. It includes strict liability. It includes absolute liability. It includes willful and wanton misconduct. It includes gross recklessness. It does not include intentional acts. The question existed for 16 years. What does the statute mean for us to do with respect to this comparison of those things called fault and intentional acts? In 2002, that got to the state Supreme Court, and in 2003, in the Tegman opinion, they said it's a two-step process. One, in the first step, assuming more than one person is liable, some are at fault and some are intentional actors. In the first step, you take all of the at-fault people, and you divide it up, and you divide up their fault as that term is defined in the statute. And the jury actually did a very precise job of doing that. There were four at-fault actors, Dr. Herbert Allenbach, two Kelly parents, and ourselves, and they found that in that order, we were 45%, 15%, 15%, and 25% liable. That's step one. You add up those four percentages, and they come to 100% if I got the numbers right. In the next stage, the jury was then asked. In the jury instructions, the verdict form begins at page 262 of the record. The jury is then asked, all right, you have the universe of at-fault conduct, 100%. How much of the total harm did that cause? And the jury said a quarter. And the intentional perpetrator, the criminal actor, caused the other three quarters. So when you do the math, in this particular instance, the church ended up being responsible for one-quarter of one-quarter of the total harm, or one-sixteenth. That's the structure. The Tegman opinion was a politically significant one in the state. It's issued in 2003. All of the arguments raised by my friend Mr. Maxwell were raised by the dissent in Tegman and rejected by the majority. Portions of the bar contended that the opinion was uncertain. Judge Martinez below found that it was not ambiguous. He said it was clear. We believed it was clear. Judge Martinez and ourselves may have been wrong. In September of last year, in a case involving our same opponents, ourselves, the same defendant, the same amicus writers for the plaintiffs, in the Doe case, Division I, in a unanimous opinion, rejected these arguments straight down the middle and said, look, the opinion's clear on facts that are very much like our own. Since September 17, we don't believe there's been any uncertainty in Washington law on this issue. I would address one other question, then I'll sit down. There's a motion to certify to the state Supreme Court. The standard for certification here is an unsettled area of the law, far-reaching impact. First, we don't believe the area of the law is unsettled, and Judge Martinez agreed with us. In fact, there was a motion to certify in the trial court post-trial, which was denied for that reason. Second, we don't believe that the court's opinion will have far-reaching impact. I am aware that I'm talking to the Ninth Circuit. No matter what you do here, it will be a footnote or a portion of a string site following what the Washington Supreme Court has already done and what Division I has done. Those decisions may have far-reaching impact. The Division I opinion in Doe has some impact. This is no longer a case to first impression. Finally, I did look yesterday afternoon, and I was unable to find any case in which certification had been accepted for the purpose of undoing binding precedent. That's all I have. If there are no further questions, I'll sit down. Thank you very much. Rebuttal? I would like to address certification. This has not been decided by Tegman. Now we're looking at what Tegman means in the next case down. It is a quirky area. The Washington Supreme Court specifically said, don't cite us the cases from all around the country that say that we can't do this because we're looking at our statute. It's the Washington Supreme Court. If they're going to make someone segregate between the lightning and the fire, in my example, the Supreme Court should look the state citizens in the eye and tell them that's what they're doing. Do you disagree with Mr. Tilden's characterization of Doe as having finally resolved this issue? Admittedly, there's one more step in the hierarchy of the Washington state courts, but do you feel that the factual distinctions in Doe and this case are sufficient to warrant anything further? There are two things about Doe that I think doesn't make it very persuasive for you folks in trying to predict what the Supreme Court does. One is, clearly it was dicta. We were all there at the argument. The court watched your clock for ten minutes, asked one or two questions, sat down, and then … Yeah, but they read your briefs. They did read our briefs. I believe they read your dissent, too, in the Tegman case. And we aren't relying on the dissent. The dissent really is saying Tegman's wrong. We're not saying Tegman's wrong. We're saying it just doesn't apply to this situation. The Ninth Circuit are always unanimous. Yes. Doe does have slightly different factual situations. Doe, in fact, had pre-notice abuse of the plaintiff. So, again, there could not have been any causal connection between what the church did in Doe and that abuse that occurred before the church even became involved. And so, again, Doe, you had to segregate under Tegman for at least that portion. The other problem with Doe is, and the trial court just got it wrong, the trial court found joint and several liability. It was blatantly wrong. We didn't try to defend it on appeal. But that's what the court was dealing with going in on the Doe case, a trial court saying it was joint and several liability and the non-causal connection for at least some portion of the deal. And I think this is, again, the Supreme Court needs to tell us what Tegman means. Have you taken Doe on up? We've submitted it. We'll find out in six or seven months. The problem with Doe and the problem with Abba Sheik, another case where this was potentially is that on Doe they found no negligence. They found no duty. And so unless they decide to reconsider that, we never get to Tegman. And so this is a case. It's framed exactly the way it needs to be framed. We have the causal connection. Now we need to know what the Supreme Court is going to do. And I don't think I know or Mr. Tilden knows or you folks know what the heck the Supreme Court is going to do with this. And so my request and our motion was to submit this to the Washington Supreme Court and let us tell the answer. And it is a far-ranging decision with regard to these facts. I can point to dozens of cases, starting with Welch and Taggart and all these cases where the court never gave any clue that there might be some segregation in this situation. We need the Supreme Court to tell us. Thank you very much, Mr. Maxon. The case of Kaye v. Church of Latter-day Saints is submitted.
judges: Bea, Smith, Hood